[No. 29067. *En Banc.* June 21, 1945.]

KINNARD W. MCINTYRE, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

'Reported in 159 P. (2d) 904.

*The Attorney General* and *Harry L. Parr, Assistant,* for appellant.

*Griffin & Gershon,* for respondent.

ROBINSON, J.—The claimant in this case fell from a scaffold and injured his right knee and, as he somewhat dilatorily contended, his left foot and back. The accident occurred on June 9, 1940. Claim was made July 5th. On August 9th, the supervisor closed the claim with an allowance for medical treatment, but no time loss. On the next day, however, the claimant protested by letter, stating that he had suffered time loss and claiming injury to his left foot and back. On September 21st, he was examined by Dr. Anderson, who suggested that he be given a rating of 8.8 degrees permanent partial disability, and, on December 12th, a check for $264 was sent to the claimant.

On March 5, 1941, claimant applied for a reopening and a rehearing before the joint board, claiming time loss and aggravation of an old foot injury. This petition was granted. Later, on February 5, 1942, claimant was examined by Drs. Leavitt and LeCocq, who concluded that he was entitled to a permanent partial disability rating of 30.18 degrees. Testimony was taken before examiners on five different dates, ending on March 13, 1942. On April 20, 1942, the joint board made an additional award for additional permanent injuries to right leg, right knee, left foot, spine, and lower back, amounting to $641.40. Claimant refused the award and appealed to the superior court.

The jury answered the interrogatories submitted by the court as follows:

"We, the jury in the above entitled case, do make the following special findings in answer to the following interrogatories:

"INTERROGATORY No. 1.: Was the decision of the defendant, department of labor and industries of the State of Washington, awarding plaintiff, Kinnard W. McIntyre, permanent partial disability of $904. correct?

"ANSWER: No.

"INTERROGATORY No. 2: How much time loss compensation is the claimant entitled to, if any?

"ANSWER: 126 days.

"INTERROGATORY No. 3: How much permanent partial disability has the claimant suffered to the following parts of his body, in addition to that which has already been paid to him:

"(a) Back $320.

"(b) Right leg at the knee $484.60.

"(c) Left leg below the knee $420."

Of these interrogatories, No. 3 seems leading and suggestive, but there is no showing that exception was taken to the form thereof. The court entered judgment for the claimant in the sum of $1,487.10. Since the aggregate amount awarded in answer to interrogatory No. 3 is $1,-224.60, it appears that $262.50 must represent the time loss found in answer to interrogatory No. 2. As the order appealed from awarded $641.40 on account of disability, it is also apparent that the jury increased that amount by $583.20. We are not able to determine from the record the respective increases as to each of the three items.

The assignments of error are as follows:

"(1) The court erred in permitting the testimony of the 25-year-old injury to go to the jury over the objection of the appellant.

"(2) The court erred in permitting a physician to testify as to time loss in the light of the plaintiff's report to the Department that he had no time loss.

"(3) The court erred in excluding the exhibits of the Department being the report of claimant's accident and the letter of claimant's attorneys making a choice of doctors.

"(4) The court erred in refusing to correct its records to show the truth in regard to the filing of the motion for a new trial."

Assignment No. 1 appears to be based upon the court's refusal to approve an objection to the introduction of pages 21 and 22 of the testimony taken by the departmental

examiner and considered by the joint board. The blanket objection upon which the appellant relies is as follows:

"MR. PARR: Now, if the Court please, from line 6 on page 21, we object to that testimony, and all of page 22, on the ground it was a prior injury and accident, and is not pertinent here, except to show merely that it was an accident. If the Court will read on page 22, there are matters there that the witness talks about which are not germane to this case."

As indicated by the assignment of error, the department contended throughout the trial in the superior court that any testimony concerning the injury to claimant's left foot, suffered in 1918, was wholly irrelevant. However, the claimant was contending that his left foot had been reinjured in the accident of June 9, 1940, and the record indicates that some portion of the $264, originally awarded, covered this claim; for that award promptly followed the report of a medical examination ordered by the department and made on September 21, 1940, which recommended an award for ". . . aggravation to the left foot, 5% of the *amputation value below the knee,* or 2.6°." (Italics ours.)

During the progress of the subsequent rehearing before the joint board, another report of a medical examination took a more serious view of the matter, saying as to the injury to the left foot:

"I believe also he should be given 5% of the value of *amputation* of the left lower extremity *at the hip,* or I believe this would be 5° for any aggravation of pre-existing pathology in this extremity resulting from his old injuries." (Italics ours.)

Still another medical examination was ordered by the department by two doctors and made upon February 5, 1942, resulting in the following recommendation as to the injury to the left lower extremity:

"For the aggravation of the left lower extremity—5% compared to amputation of the left lower extremity at the hip, or 5° p. p. d., making a total of 30.18° p. p. d. We recommend closure of this claim on this basis, and recommend no further treatment."

This recommendation was presumably reflected in the award of $641.10, from which the appeal was taken to the superior court. It was manifest that the condition of the claimant's left foot and the generalized atrophy of his left leg, found by the medical examinations, could not have been wholly caused by the accident of June 9, 1940. The X rays, as interpreted by the medical examiners, showed that at some time that foot had been "crushed." In giving his history to the doctors, the claimant said that this had happened in 1918, while he was working in a logging camp. The immediate problem before the joint board on the rehearing, therefore, was: How much of the now condition of the claimant's left foot (or left lower extremity, as the doctors referred to it) is attributable to the accident of June, 1940, and how much to the preexisting accident? It would seem almost axiomatic that the contribution of the second accident to the claimant's present condition could scarcely be determined without inquiring into the character and effect of the first. At any rate, the examiner adopted that as one method of approach to the problem, and we think it was a logical and permissible method.

The blanket objection was to all of page twenty-one from line six. The material from line six to line twenty-six (there are but thirty lines on the page) is strictly relevant, since it is directly concerned with that part of the disability which, claimant asserts, was caused by the accident of 1940. A portion of the evidence on page twenty-two is irrelevant, and a portion is relevant. For example, in determining how serious the injury of 1940 was, it was relevant for the jury to know that, after the original accident, the claimant left the hospital on crutches and was six months on crutches thereafter, and the amount of the award made by the department was of relevancy as indicating in some measure the character and extent of the original injury. The fact is that, on page twenty-two, the relevant and irrelevant matter was so interwoven that it could not be physically separated, sentence by sentence. To grant the blanket objection, page by page, would have constituted an error against the claimant.

A situation was presented where an instruction by the court as to what elements might properly be considered and what should not be taken into consideration might well have been given when the evidence was read to the jury, or, perhaps, more properly in the instructions as to the claim of injury to the left foot at the close of the case. It may be that this latter plan was adopted; for, although the instructions are not in the record, it is indicated that some special instruction was given as to finding the amount of injury to the left foot. In the statement of facts, we find the following:

"Mr. Parr: The Jury having retired, the defendant excepts to the giving of Instruction No. 9, for the reason that there was no latent or quiescent infirmity or weakened physical condition, whether congenital or developmental, shown by any testimony on this case. I guess that is all."

Under the circumstances, as above related, we find no reversible error "in permitting the testimony of the 25-year-old injury to go to the jury over the objection of the appellant." Having arrived at this conclusion, it is unnecessary to decide whether, as contended by the respondent, the testimony was not subject to an objection in the superior court on the ground that no objection was taken when it was admitted (and in part elicited) by the examiner for the department on taking testimony for the information of the joint board.

As to assignment No. 2, we find that, in his original accident report, the claimant said he had no time loss, but, in his letter to the department, when he received the original award, he protested against the close of the claim and claimed time loss after that report was made. As we have heretofore stated, the claim was reopened twice, on the second occasion, March 10, 1941, as a result of the petition for rehearing. This petition claimed time loss, and it appears to us that this was one of the reasons why it was granted. As we read the record, there is no dispute about the fact that claimant sustained no time loss prior to the signing of the accident report of July 5, 1940. The matter

at issue before the joint board was whether or not he lost time from his work subsequent to the report and prior to the time his permanent partial disability became fixed. The action of the joint board in opening the matter and granting the rehearing was a consent that the claimant might produce evidence on that subject.

■ As to assignment No. 3, we have already shown that the report of the claimant's accident was not material to the wider inquiry, later authorized. Nor are we able to see where the letter of the claimant's attorneys, asking that the claimant be treated by a particular doctor, was of any relevancy.

■ Assignment No. 4 relates to the motion for a new trial. It is contended that the court erred in refusing to correct its records as to the date of filing that motion. The motion for a new trial bears filing date of the clerk of the superior court of King county, November 6, 1942. Affidavits were made by various employees of the attorney general's office that the motion had been mailed to the clerk of King county in an envelope, properly addressed and with sufficient postage attached, on the previous October 23rd. After hearing argument on the motion, the trial court refused to correct its record. This was peculiarly a matter within its discretion. We must accept the judgment as a determination of that matter, and particularly so since there is no factual record as to what occurred at the hearing of the motion.

■ Finally, other errors are urged in the appellant's brief, though not by way of formal assignment. There is argument to the effect that, to some extent, the instructions of the court permitted a double recovery. There may be merit in this suggestion, but the state of the record is such that we cannot inquire into the matter. A similar position was taken, and vigorously pressed, in the recent case of *Peterson v. Department of Labor & Industries*, 22 Wn. (2d) 647, 157 P. (2d) 298. There, it was held that the question could not be considered due to the fact that the in-

structions became the law of the case for want of a record showing of sufficient exceptions thereto. In the instant case, we do not even have the instructions.

The judgment appealed from is affirmed.

BEALS, C. J., STEINERT, BLAKE, JEFFERS, MALLERY, and GRADY, JJ., concur.

MILLARD, J., concurs in the result.

SIMPSON, J. (dissenting)—I cannot agree that a claimant may recover for an injury that is twenty-five years old.